UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION


ASHLEY SUTTON,                         )
                                       )
                    Plaintiff,         )
                                       )
           v.                          )          No.  4:13CV1035 TIA
                                       )
CAROLYN W. COLVIN, Commissioner        )
of Social Security,                    )
                                       )
                    Defendant.         )


**MEMORANDUM AND ORDER**
**OF UNITED STATES MAGISTRATE JUDGE**

        This cause is on appeal from an adverse ruling of the Social Security Administration.

The suit involves an application for Disability Insurance Benefits under Title II of the Social

Security Act.  Claimant has filed a Brief in Support of her Complaint; the Commissioner has filed

a Brief in Support of her Answer. The parties consented to the jurisdiction of the undersigned

pursuant to 28 U.S.C. § 636(c).

**I.      Procedural History**

        On March 14, 2011, Claimant filed an Application for Disability Insurance Benefits under

Title II of the Act, 42 U.S.C. §§ 401 et. seq. (Tr. 109-25)[1] alleging disability since February 1,

2010 due to back injury, blind in her right eye, ADHD, ADD, and bipolar.  (Tr. 140).  The

application was denied  (Tr. 53-57), and Claimant subsequently requested a hearing before an

Administrative Law Judge ("ALJ"). (Tr. 59-61).  On May 8, 2012, a hearing was held before an

ALJ.  (Tr. 18-48).  Claimant testified and was represented by counsel.  (Id.).  Vocational Expert

_____

        [1]"Tr." refers to the page of the administrative record filed by Defendant with its Answer.
(Docket No. 13/filed August 6, 2013).

Carmen Mitchell also testified at the hearing. (Tr. 23-25, 73-74). In a decision dated May 25, 2012, the ALJ found that Claimant had not been under a disability as defined by the Social Security Act. (Tr. 42-47). The Appeals Council denied Claimant's Request for Review on March 26, 2013. (Tr. 1-3). Thus, the ALJ's decision is the final decision of the Commissioner.

## II.    Evidence Before the ALJ

### A.  Hearing on May 8, 2012

At the hearing on May 8, 2012, Claimant testified in response to questions posed by the ALJ and counsel. (Tr. 18-48). At the time of the hearing, Claimant was twenty-three years old, and her date of birth is September 23, 1988. (Tr. 22). Claimant stands at five feet three and one half inches and weighs approximately 189 pounds. (Tr. 22). She has a driver's license with restrictions, because she has no vision in right eye. (Tr. 22-23). Claimant graduated from high school and had an IEP and attended special education classes until her junior year. (Tr. 23). She started St. Charles Community College but stopped attending after half a semester due to her pregnancy. (Tr. 24).

Claimant last worked in August 2011 for three weeks as a cashier at Fastland Gas Station, but she stopped due to her back. (Tr. 25). She stocked the coolers with soda and beer and lifted cases when stocking. (Tr. 25). In 2009, Claimant worked for eight months at McDonald's as a cashier and a cook, and she lifted cases of meat weighing twenty-five to thirty pounds. (Tr. 26). She quit when her hours were cut to fours a week. (Tr. 26). Claimant worked for Daddy Ray's Acquisition Corporation standing on a line eight to ten hours a day grabbing cookies from a moving conveyor and placing the cookies in a tray. (Tr. 27). After packing the boxes, she moved the boxes to palettes and then stacked the palettes. (Tr. 28). She started working there at age

eighteen, but she quit after having her daughter because of post pregnancy problems. (Tr. 28). In 2008, she worked at Troy Manor for four months as a nursing assistant, but she left after her father had a heart attack. (Tr. 43-44). While working at Troy Manor, Claimant attended classes paid by Troy Manor. (Tr. 44). Claimant also worked at Steak and Shake as a waitress, production worker, and dish cleaner. (Tr. 28). She injured her tailbone after slipping and falling while doing dishes. (Tr. 29). She quit after finding out she was pregnant and did not want to risk falling again. Claimant worked as a cashier at WalMart for five months but she left after she had an altercation with a customer service manager. (Tr. 29). For a couple of months, Claimant worked as a commercial cleaner at a church. (Tr. 30). While in high school, she also worked part time at Hardee's as a cashier and a production worker. (Tr. 30).

Claimant testified that she cannot work, because she has problems sitting for long periods of time. (Tr. 31). Sitting causes her back to start hurting. (Tr. 31). Claimant testified that she can sit for fifteen to twenty minutes before she has to stand. (Tr. 33). Later she testified that she cannot sit or stand for more than thirty minutes at a time. (Tr. 42). Walking causes her problems. (Tr. 32). She can walk for five minutes and then her back starts hurting. (Tr. 33). After having her son, Claimant returned to work, but she could not handle the pain. (Tr. 42).

Claimant's back pain started in July 2010. (Tr. 32). She testified that she is not taking any medications because of her pregnancy. (Tr. 32). Claimant testified that she sometimes has problems with her memory and trouble concentrating. (Tr. 35). Claimant has ADHD. (Tr. 35). Claimant has not seen an orthopedist and has Medicaid, but she testified that she is uncertain whether treatment by an orthopedist would be covered. (Tr. 41-42).

Her daily activities include picking up around the house, washing the dishes, vacuuming,

folding laundry, and taking care of her two children ages four and nineteen months. (Tr. 33). Playing pool on a league is her hobby, but she testified she is hardly playing. (Tr. 34). Claimant watches television and can read only one page before she loses her concentration. (Tr. 36). Claimant helps take care of her eleven year old stepdaughter and checks emails from her teachers as well as her stepdaughter's siblings ages six and seven every other week. (Tr. 36-37). Her unemployed significant other is home during the day and helps with the children. (Tr. 37).

Claimant testified that she has problems dealing with people in big crowds and becomes anxious. (Tr. 37). She testified that her vision was the only medical impairment she had in February 2010. (Tr. 39). Claimant acknowledged she has had her vision problem her whole life. She testified that she has had anxiety for a long time, but she was not prescribed Zoloft until after her son was born. Claimant stopped taking Zoloft last December when she found out she is pregnant. (Tr. 39). She experiences headaches and can only get rid of the headache by going to sleep. (Tr. 40).

## 2. Testimony of Vocational Expert

Vocational Expert Carmen Mitchell, a certified vocational consultant, testified in response to the ALJ's questions. (Tr. 42-47). Ms. Mitchell identified Missouri and the United States as the specific region of the country she would be using in her reference concerning the existence and number of jobs. (Tr. 45). Ms. Mitchell identified Claimant's vocational history over the last fifteen years as a hand packager classified as light but described as medium work; fast food worker, classified as unskilled and light work but light to medium work as described by Claimant; a waitress classified as semi-skilled and light but medium per Claimant; a cashier/checker classified as semi-skilled and light work; and a nurse aid classified as semi-skilled and medium

work.  (Tr. 45-46).

The ALJ asked Ms. Mitchell to assume that

a person of the Claimant's age, education, past work experience.  Please assume a
person is capable of performing at the light exertional level, however, that person
is further limited in that they can only perform semi-skilled work.  Would such a
person be able to perform any of the Claimant's past work?

(Tr. 46).  Ms. Mitchell opined that such person could still work as a cashier/checker with 23,000

jobs in Missouri and 1,000,000 nationally or a waitress with 28,3000 jobs in Missouri and

1,235,000 nationally but the other work would be precluded.  (Tr. 46).

Next, the ALJ asked Ms. Mitchell to assume that

the person could only remain on task without redirection for 15 minutes and had to
be redirected by a supervisor every 15 minutes to remain on task.  Would such a
person be able to perform either of those two jobs?

(Tr. 46-47).  Ms. Mitchell opined that the person could not perform either of the jobs and perform

any other work on a full-time competitive basis in the regional or national economy.  (Tr. 47).


### 3.  Forms Completed by Claimant

In the Function Report - Adult, Claimant indicated she stopped working on February 1,

2010 because of her condition(s) and other reasons.  (Tr. 131).  She further explained how she

was pregnant with her second child and having complications.  (Tr. 131).  Claimant responded

that she never attended any special education classes.  (Tr. 132).  She listed acetaminophen,

cyclobenzaprine, naproxen, propranolol, and sumatriptan as her medications.  (Tr. 134).  Claimant

noted she started treatment with Dr. Patty Rapplean on March 11, 2011for her back pain and

headaches.  (Tr. 134).  She noted how Dr. Paul Tapia treated her on September 14-15, 2010 to

stop her back pains from labor after the birth of her child. (Tr. 135).

In the March 16, 2011 Function Report - Adult, Claimant reported waking up at five to get the children ready for school and then cleaning and cooking as her daily activities. (Tr. 137). Then she does her school work and then she prepares dinner before she has to go to her pool league. (Tr. 137). She shops for groceries twice a week and can drive a car and go out alone. (Tr. 140). Claimant is able to pay bills and handle a savings account. (Tr. 140). She listed scrapbooking as her hobby and playing pool twice a week as her social activity. (Tr. 141). On a regular basis, Claimant goes to the store, her parents' house, and friends' houses. (Tr. 141). She indicated that she handles stress okay and changes in routine. (Tr. 143). Claimant is able to use the computer for about one hour. (T. 146).

In the Disability Report - Appeal, Claimant reported having severe depression with bipolar since August 31, 2011 as a change in her condition since last completing a disability report. (Tr. 159).

## III.    Medical and Other Records

During a routine gynecological examination on September 18, 2009, the treating doctor provided found Claimant to have a full range of motion with no CVA tenderness in her musculoskeletal. (Tr. 178). In the February 3, 2010 treatment note, Claimant indicated that she wanted paternity testing before the baby is born. (Tr. 190).

On December 9, 2010, Claimant underwent an elective sterilization procedure. (Tr. 193).

On March 11, 2011, Claimant sought treatment at Ria Medical for back pain starting six months earlier. (Tr. 223). Patricia Rapplean, a nurse practitioner, evaluated Claimant's lower back pain. She reported the current episode of pain started six months. She reported smoking

ten to fifteen cigarettes a day for fifteen years.  Ms. Rapplean provided education about cessation for fifteen minutes.  Claimant reported having moderate to severe headaches twice a week.  Examination revealed chronic back pain.  (Tr. 223).  Her current medical provider is Dr. Paul Tapia, an obstetrician/gynecologist.  (Tr. 224).  Ms. Rapplean observed Claimant to have a normal gait and found her to have a decreased range of motion in her back and diagnosed her with low back pain, migraine headache, and nicotine dependence.  (Tr. 225).  Ms. Rapplean prescribed Naprosyn, Flexeril, and Inderal as treatment and recommended home strengthening exercises and weight loss.  (Tr. 225-26).  X-ray of her lumbar spine showed no fracture or anterelisthesis.  (Tr. 222).  Claimant returned for follow-up treatment on March 31, 2011, and Claimant indicated that she needs disability paperwork.  (Tr. 216).  Dr. Navin Choudhary educated Claimant about smoking cessation.  Examination was positive for back pain.  (Tr. 216).  Dr. Choudhary noted in the psychiatric examination negative for depression and difficult concentrating.  (Tr. 217).  Examination showed decreased range of motion in her back.  (Tr. 218).  Dr. Choudhary ordered a MRI of her lumbar spine and recommended home back strengthening exercises and with loss.. (Tr. 218-19).  The MRI showed no abnormal enhancement and no large disc herniation or canal stenosis.  (Tr. 210-11).

On April 19, 2011, Claimant returned for follow-up treatment for her back pain.  (Tr. 205).  She reported having depression with anxiety with symptoms including shortness of breath and crying spells almost every day.  She reported triggers include unemployment and financial and not currently being treated for anxiety.  She has feelings of stress, difficulty concentrating, and sadness.  (Tr. 205).  Victoria Cobb, a nurse practitioner, found Claimant to be moderately obese with a normal gait and a decreased range of motion in her back.  (Tr. 207).  Ms. Cobb listed low

back pain, decreased concentration, and syncope in the assessment. (Tr. 208). Ms. Cobb indicated she may consider physical therapy and provided back exercise information and prescribed Zoloft. (Tr. 208).

In the July 18, 2011 general medicine evaluation, Claimant reported mental problems as her chief complaint and seeing a psychologist for treatment that day and lower back pain and legally blind in her right eye. (Tr. 232). She smokes one pack of cigarettes each day. (Tr. 233). Dr. Elbert Cason noted her general appearance to be overweight for her height. Examination showed full range of motion in her back with slight tenderness in the lower lumbar area, and straight leg raises to be negative. Dr. Cason observed Claimant to be able to heel and to stand and squat by holding onto the edge of the examining table. (Tr. 233). Dr. Cason observed her cervical spine motions and hip motions to be normal, and the remainder of the musculoskeletal examination to be unremarkable (Tr. 234). Dr. Cason found her mental status to be alert and oriented x3. In the clinical impression, Dr. Cason found Claimant to be blind in her right eye, having chronic low back pain with negative MRI, and overweight for her height. (Tr. 234).

On referral by disability determination, Dr. Sherman Sklar evaluated Claimant on July 18, 2011. (Tr. 240). She reported being a divorced woman who is not employed. Claimant reported she stopped working in 2009 because her hours were cut so it was no longer reasonable for her to go to work. She reported applying for social security benefits. Her chief complaints included blind in her right eye, back pain, bipolar, and ADHD. (Tr. 240). Claimant reported the lack of ability to get a job and the break up of her marriage as stressor. (Tr. 241). She described her bipolar condition as mood changes. Claimant noted playing pool as being her main social activity outside of the home. Her daily activities include fixing breakfast and cleaning around the house

including doing the laundry. She gets on the computer to take a couple of online courses in healthcare management. (Tr. 241). She also watches her soap programs, plays with the children, and two nights a week plays pool. (Tr. 242). Dr. Sklar observed Claimant cry on several occasions during the interview. (Tr. 242). Her activities of daily living include paying some bills, cooking, doing housework, grocery shopping, playing with her children and serving as their primary care taker, reading, and playing pool. (Tr. 243). She has friends through her pool playing activities. (Tr. 244). Dr. Sklar assessed her GAF to be 68 and noted she showed some signs some slight problems with attention and found her mood to be depressed. Dr. Sklar noted no expected change unless she receives some anti-depressant medications to stabilize her mood. (Tr. 244).

In the July 29, 2011 Psychiatric Review Technique, Dr. Joan Singer, PhD, found Claimant to have mild functional limitation in difficulties in maintaining concentration, persistence, or pace. (Tr. 248-56). In support, Dr. Singer noted on her application, Claimant denied having any prior treatment for any mental health or learning problems, and no indication of any mental impairment in the MER in file until April 19, 2011 when Claimant reported decreased concentration and crying spells. (Tr. 258). The primary care doctor diagnosed decreased concentration and prescribed Zoloft. Dr. Singer questioned whether Claimant continued the Zoloft prescribed. Dr. Singer concluded that Claimant has mental impairments that do not limit her functioning to a severe degree. (Tr. 258).

In follow-up treatment at Ria Medical on August 31, 2011, Claimant reported high blood sugar issues and presented with a diagnosis of overweight and obesity. (Tr. 263). Dr. Seema Iyer found Claimant to have chronic back pain, crying spells, feelings of stress, difficulty

concentrating, and sadness. (Tr. 263). She reported continued smoking. (Tr. 264). Examination showed her to be moderately obese and having a decreased range of motion in her back. (Tr. 265). Psychiatric examination showed Claimant to be appropriate in affect and demeanor. (Tr. 265). Dr. Iyer recommended ten pound weight loss and a graduated exercise program. (Tr. 266).

On September 13, 2011, Dr. Iyer found Claimant to have elevated testing glucose. (Tr. 267-69). On October 13, 2011, Claimant sought treatment after falling down the stairs and experiencing pain on her back side and hurting her tailbone. (Tr. 271). Claimant reported continued smoking. (Tr. 272). Dr. Iyer prescribed Norco and ordered radiologic examination of her spine. (Tr. 273-74). Claimant returned on December 13, 2011 and reported moderate degree of depression and being diagnosed with depression several years ago. (Tr. 275). She reported her current affective symptoms to include anxious mood, decreased ability to concentrate, fatigue, guilt, sadness, and feelings of worthlessness. The urine test showed positive for pregnancy. Claimant reported continued smoking. (Tr. 276). Dr. Iyer discussed smoking cessation and advised her to stop smoking. (Tr. 278). In the assessment, Dr. Iyer listed amenorrhea, major depression, single episode, and positive pregnancy test. (Tr. 278).

## IV. The ALJ's Decision

The ALJ found that Claimant meets the insured status requirements of the Social Security act on June 30, 2010. (Tr. 10). Claimant has not engaged in substantial gainful activity during the period from her alleged onset date of February 1, 2010 through the date of her last insured of June 30, 2010. The ALJ found that Claimant has the medically determinable impairments of obesity, blindness in one eye, a back disorder, depression, and affective mood deficit hyperactivity disorder. The ALJ opined that Claimant does not have an impairment or

combination of impairments that significantly limited her ability to perform basic work-related activities for twelve consecutive months and therefore she does not have a severe impairment or combination of impairments. (Tr. 10). After careful consideration of the entire record, the ALJ determined that Claimant's physical and mental impairments do not significantly limit her ability to perform basic work activities and thus she does not have a severe impairment or combination of impairments. (Tr. 14). The ALJ concluded that Claimant has not been under a disability at any time from February 1, 2010, the alleged onset date, through June 30, 2010, the date of last insured. (Tr. 14).

## V.    Discussion

In a  disability insurance benefits case, the burden is on the claimant to prove that he or she has a disability. Pearsall v. Massanari, 274 F.3d 1211, 1217 (8th Cir. 2001).  Under the Social Security Act, a disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A).  Additionally, the claimant will be found to have a disability "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A) and 1382c(a)(3)(B); see also Bowen v. Yuckert, 482 U.S. 137, 140 (1987).

The Commissioner has promulgated regulations outlining a five-step process to guide an ALJ in determining whether an individual is disabled.  First, the ALJ must determine whether the

individual is engaged in "substantial gainful activity." If she is, then she is not eligible for disability benefits. 20 C.F.R. § 404. 1520(b). If she is not, the ALJ must consider step two which asks whether the individual has a "severe impairment" that "significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). If the claimant is not found to have a severe impairment, she is not eligible for disability benefits. If the claimant is found to have a severe impairment the ALJ proceeds to step three in which he must determine whether the impairment meets or is equal to one determined by the Commissioner to be conclusively disabling. If the impairment is specifically listed or is equal to a listed impairment, the claimant will be found disabled. 20 C.F.R. § 404.1520(d). If the impairment is not listed or is not the equivalent of a listed impairment, the ALJ moves on to step four which asks whether the claimant is capable of doing past relevant work. If the claimant can still perform past work, she is not disabled. 20 C.F.R. § 404.1520(e). If the claimant cannot perform past work, the ALJ proceeds to step five in which the ALJ determines whether the claimant is capable of performing other work in the national economy. In step five, the ALJ must consider the claimant's "age, education, and past work experience." Only if a claimant is found incapable of performing other work in the national economy will she be found disabled. 20 C.F.R. § 404.1520(f); see also Bowen, 482 U.S. at 140-41 (explaining five-step process).

Court review of an ALJ's disability determination is narrow; the ALJ's findings will be affirmed if they are supported by "substantial evidence on the record as a whole." Pearsall, 274 F.3d at 1217. Substantial evidence has been defined as "less than a preponderance, but enough that a reasonable mind might accept it as adequate to support a decision." Id. The court's review "is more than an examination of the record for the existence of substantial evidence in support of

the Commissioner's decision, we also take into account whatever in the record fairly detracts from that decision." Beckley v. Apfel, 152 F.3d 1056, 1059 (8th Cir. 1998). The Court will affirm the Commissioner's decision as long as there is substantial evidence in the record to support his findings, regardless of whether substantial evidence exists to support a different conclusion. Haley v. Massanari, 258 F.3d 742, 747 (8th Cir. 2001).

In reviewing the Commissioner's decision, the Court must review the entire administrative record and consider:

1. The credibility findings made by the ALJ.

2. The claimant's vocational factors.

3. The medical evidence from treating and consulting physicians.

4. The claimant's subjective complaints relating to exertional and non-exertional activities and impairments.

5. Any corroboration by third parties of the claimant's impairments.

6. The testimony of vocational experts when required which is based upon a proper hypothetical question which sets forth the claimant's impairment.

Stewart v. Secretary of Health & Human Servs., 957 F.2d 581, 585-86 (8th Cir. 1992) (quoting Cruse v. Bowen, 867 F.2d 1183, 1184-85 (8th Cir. 1989)).

The ALJ's decision whether a person is disabled under the standards set forth above is conclusive upon this Court "if it is supported by substantial evidence on the record as a whole." Wiese v. Astrue, 552 F.3d 728, 730 (8th Cir. 2009) (quoting Finch v. Astrue, 547 F.3d 933, 935 (8th Cir. 2008)). "Substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the conclusion." Wiese, 552 F.3d at 730 (quoting Eichelberger v. Barnhart, 390 F.3d 584, 589 (8th Cir. 2004)). When reviewing the

record to determine whether the Commissioner's decision is supported by substantial evidence, however, the Court must consider evidence that supports the decision and evidence that fairly detracts from that decision. Id. The Court may not reverse that decision merely because substantial evidence would also support an opposite conclusion, Dunahoo v. Apfel, 241 F.3d 1033, 1037 (8th Cir. 2001), or it might have "come to a different conclusion." Wiese, 552 F.3d at 730. Thus, if "it is possible to draw two inconsistent positions from the evidence and one of those positions represents the agency's findings, the [Court] must affirm the agency's decision." Wheeler v. Apfel, 224 F.3d 891, 894-95 (8th Cir. 2000). See also Owen v. Astrue, 551 F.3d 792, 798 (8th Cir. 2008) (the ALJ's denial of benefits is not to be reversed "so long as the ALJ's decision falls within the available zone of choice") (internal quotations omitted).

Claimant argues that the ALJ's decision is not supported by substantial evidence on the record as a whole, because the ALJ erred by not finding Claimant to have a severe impairment. Next, Claimant contends that the ALJ improperly analyzed her credibility.

## A.         Severity of Claimant's Impairments

Claimant argues that the ALJ's decision is not supported by substantial evidence on the record as a whole, because the ALJ erred by not finding Claimant to have a severe impairment in light of the medical evidence documenting significant and longstanding limitations arising from her impairments including back pain, obesity, mental disorders, and blindness. The Court finds Claimant's contention that the ALJ erred in failing to find her impairments to be severe impairments and to determine their effect on her limitations to be without merit.

In her application for disability benefits, Claimant alleged disability due to back injury, blind in her right eye, ADHD, ADD, and bipolar. The ALJ found Claimant has only slight

abnormalities not significantly limiting the performance of any basic work activities, and concluded that the impairments, alone or in combination, are not of listing level. The Social Security regulations define a nonsevere impairment as an impairment or combination of impairments that does not significantly limit a claimant's ability to do basic work activities. See 20 C.F.R. §§ 404.1521(a), 416.921(a). Basic work activities include walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, handling, seeing, hearing, speaking, understanding, carrying out and remembering job instructions, use of judgment, responding appropriately to supervision, co-workers and usual work situations and dealing with changes in a routine work setting. See 20 C.F.R. §§ 404.1521(b), 416.921(b). In finding Claimant's impairments not to be severe impairments, the ALJ noted there is no corroborating evidence from any doctor finding Claimant to have any functional limitations, and such alleged symptoms have not resulted in any significant limitations in her ability to do basic work activities. Accordingly, the ALJ determined that the impairments did not have more than a minimal impact upon the Claimant's ability to engage in basic work-related activities such that it did not satisfy 20 C.F.R. §§ 404.1521 and 404.921.

The undersigned notes that the fact that Claimant did not allege obesity in her application for disability benefits is significant, even though she submitted some medical evidence of obesity and the ALJ found obesity to be a severe impairment. See e.g. Dunahoo v. Apfel, 241 F.3d 1033, 1039 (8th Cir. 2001) (failure to allege disabling mental impairment in application is significant, even if evidence of depression was later developed). Claimant did not testify at the hearing that her obesity affects her ability to function, and the medical evidence of record demonstrated that Claimant's obesity had no effect on her functional abilities. The undersigned concludes that the

ALJ did not err in discounting Claimant's obesity.  See <u>Kirby v. Astrue</u>, 500 F.3d 705, 707-09 (8th Cir. 2007) (impairment is not severe if it is only slight abnormality that would not significantly limit mental ability to do basic work activities; claimant bears the burden of establishing impairment's severity).

The undersigned finds the record is devoid of any evidence supporting Claimant's contention that her obesity is severe.  First, Claimant never alleged that obesity was disabling, and she presented no medical evidence substantiating this claim.  Claimant never alleged any limitation in function as a result of her obesity in her application for benefits or during the hearing.  Indeed, the medical evidence is devoid of any support.  Likewise, it is important to note that all of Claimant's examining doctors were aware of her obesity, but none of the doctors who examined Claimant provided an opinion or imposed limitations greater than that identified by the ALJ.  <u>See</u> <u>Forte v. Barnhart</u>, 377 F.3d 892, 896 (8th Cir. 2004) ("Although his treating doctors noted that Forte was obese and should lose weight, none of them suggested his obesity imposed any additional work-related limitations, and he did not testify that his obesity imposed additional restrictions.").

The ALJ determined that Claimant has the medically determinable impairments of obesity, blindness in one eye, a back disorder, depression, and affective mood deficit hyperactivity disorder.  The ALJ opined that Claimant does not have an impairment or combination of impairments that significantly limited her ability to perform basic work-related activities for twelve consecutive months and therefore she does not have a severe impairment or combination of impairments.  After careful consideration of the entire record, the ALJ determined that Claimant's physical and mental impairments do not significantly limit her ability to perform basic work

activities and thus she does not have a severe impairment or combination of impairments.

In making the determination that her mental impairments were not severe, the ALJ properly invoked 20 C.F.R. § 404.1520a, which requires an ALJ to determine the severity of the mental impairment by rating the degree of functional loss the impairment causes a claimant to suffer in the areas of daily living,; social functioning; concentration, persistence, or pace; and episodes of decompensation. 20 C.F.R. § 404.1520a(c), (d). A mental impairment is not severe if it results in no more than mild limitations in the first three functional areas and none in the fourth area. 20 C.F.R. § 404.1520a(d)(1).

> When we rate the degree of limitation in the first three functional areas (activities of daily living; social functioning; and concentration, persistence, or pace), we will use the following five-point scale: None, mild, moderate, marked, and extreme. When we rate the degree of limitation in the fourth functional area (episodes of decompensation), we will use the following four-point scale: None, one or two, three, four or more....
> ...
>
> If we rate the degree of your limitation in the first three functional areas as "none" or "mild" and "none" in the fourth area, we will generally conclude that your impairment(s) is not severe....

20 C.F.R. § 404.1520a(c)(4)-(d)(1). The ALJ summarized the evidence of record and, after undergoing the required analysis, found Claimant's mental impairments of depression and ADHD to result in no limitations in her daily activities or in social functioning; mild limitations in maintaining concentration, persistence, and pace; and to have resulted in no repeated episodes of decompensation. The ALJ thus concluded that Claimant's mental impairments were not severe. (Tr. 12-13). For the following reasons, substantial evidence on the record as a whole supports this determination.

As noted by the ALJ, Claimant reported she has no problems caring for herself and her

children and cleaning and cooking and doing school work as her daily activities. Further, she testified that she cleans, does the laundry, vacuums, and drives and shops in stores. Claimant also reported reading, watching television, scrapbooking, playing pool twice a week, and using the computer to take online classes and check emails from her stepdaughter's teachers. On a regular basis, she goes to the store, her parents' house, and friends' houses. Claimant indicated that she is able to pay bills and handle a savings account. Based on this record, the ALJ did not err in finding Claimant not to be limited in her activities of daily living or in social functioning. In addition, the ALJ noted Claimant's self report that she is able to drive, shop, and does not need reminders to take care of her personal needs to support his finding that Claimant had no more than mild limitations in concentration, persistence, or pace. The ALJ further supported these findings with his observation that consultative examiners found Claimant not to have any limitations in activities of daily living and no limitations in social functioning and mild limitations in concentration, persistence, or pace.

Finally, the ALJ noted that the treatment notes "indicated that the claimant was negative for depression at times during the period at issue." (Tr. 13).

The ALJ underwent the proper analysis in determining that Claimant's mental impairments did not rise to the level of a severe impairment under the Regulations, and substantial evidence on the record as a whole supports this determination. While Claimant argues that an inconsistent position may be drawn from the evidence, the Court must affirm the ALJ's decision if it is supported by substantial evidence. Goff v. Barnhart, 421 F.3d 785, 789 (8th Cir. 2005).

The ALJ considered possible limitations caused by her blindness in her right eye and noted how although she is legally blind in her right eye since age two, Claimant testified that she is able

to drive a car indicating that her vision problems were not sufficiently significant. Further, the treatment notes reflect that she did not have blurred vision or eye pain. Moreover, the undersigned notes that Claimant has been blind since age two, but the record establishes that she graduated from high school and worked for several years with this condition. See Goff v. Barnhart, 421 F.3d 785, 792 (8th Cir. 2005) (claimant continuing to work with disabling impairments for three years and had no evidence of deterioration demonstrated that impairments were not disabling); Martise v. Astrue, 641 F.3d 909, 924 (8th Cir. 2011) (affirming denial of benefits to claimant alleging disabling migraine headaches when claimant had worked for several years with headaches and there was no medical evidence that headaches had worsened); see also Van Vickle v. Astrue, 539 F.3d 825, 830 (8th Cir. 2008) ("[D]espite suffering from what she calls "extreme fatigue," Van Vickle continued to work for over four years."). When a claimant has worked with an impairment, the impairment cannot be considered disabling without a showing that there has been significant deterioration in that impairment during the relevant time period. See Dixon v. Sullivan, 905 F.2d 237, 238 (8th Cir. 1990).

In finding her low back pain not to be severe, the ALJ noted an MRI of her lumbar spine showed a minimal annular bulge at L4-L5 and a mild annular bulge at L3-L4, but there was no abnormal enhancement and no large disc herniation and canal stenosis. During a consultative examination, Dr. Cason noted Claimant to have a full range of motion with slight tenderness in the lower lumbar area, but no muscle spasms were noted. Dr. Cason further noted that she could heel and toe stand and squat by holding onto the edge of the exam table and observed her gait was with a wide stance and no limping. Treating doctors recommended conservative treatment consisting of back strengthening exercises and weight loss. Although Claimant testified at the

hearing that her back pain limits her ability to sit and stand and that medication does not provide her relief, the objective medical evidence does not support this testimony and is inconsistent with such evidence. 20 C.F.R. § 404.1529 ("statements about your pain or other symptoms will not alone establish that you are disabled; there must be medical signs and laboratory findings which will show that you have a medical impairment(s) which could reasonably be expected to produce the pain or other symptoms alleged."). The absence of objective medical basis to support Claimant's subjective complaints is an important factor the ALJ should consider when evaluating those complaints. Renstrom v. Astrue, 680 F.3d 1057, 1065 (8th Cir. 2012); Stephens v. Shalala, 50 F.3d 538, 541 (8th Cir. 1995) (lack of objective findings to support pain is strong evidence of lack of a severe impairment); Barrett v. Shalala, 38 F.3d 1019, 1022 (8th Cir. 1994) (the ALJ was entitled to find that the absence of an objective medical basis to support claimant's subjective complaints was an important factor in evaluating the credibility of her testimony and of her complaints).

Based on the objective medical evidence, the ALJ determined Claimant's impairments not to be severe impairments, and the undersigned finds that substantial evidence supports the ALJ's determination. The ALJ based this determination on substantial evidence from the medical record. "Although required to develop the record fully and fairly, an ALJ is not required to discuss every piece of evidence submitted." Wildman v. Astrue, 596 F.3d 959, 966 (8th Cir. 2010) (quoting Black v. Apfel, 143 F.3d 383, 386 (8th Cir. 1998). Furthermore, "[a]n ALJ's failure to cite specific evidence does not indicate that such evidence was not considered." Id. Here, the ALJ addressed the medical records in his decision, and the undersigned finds the ALJ's findings are based on substantial evidence from the medical record as a whole.

The undersigned notes that where there are conflicts in the evidence, the resolution of such conflicts is for the Commissioner, and not the Court, to make. Cantrell v. Apfel, 231 F.3d 1104, 1107 (8th Cir. 2000); Beasley v. Califano, 608 F.2d 1162, 1166 (8th Cir. 1979). This is so even when the medical evidence is in conflict. Cantrell, 231 F.3d at 1107; Bentley v. Shalala, 52 F.3d 784, 787 (8th Cir. 1995)("Where the medical evidence is equally balanced, ... the ALJ resolves the conflict."). "It is the ALJ's function to resolve conflicts among the various treating and examining physicians." Estes v. Barnhart, 275 F.3d 722, 725 (8th Cir. 2002) (internal quotation marks omitted).

**B.          Credibility Determination**

Claimant contends that the ALJ improperly analyzed her credibility.

The Eighth Circuit has recognized that, due to the subjective nature of physical symptoms, and the absence of any reliable technique for their measurement, it is difficult to prove, disprove or quantify their existence and/or overall effect. Polaski, 739 F.2d 1321-22. In Polaski, the Eighth Circuit addressed this difficulty and set forth the following standard:

> The absence of an objective medical basis which supports the degree of severity of subjective complaints alleged is just one factor to be considered in evaluating the credibility of the testimony and complaints. The adjudicator must give full consideration to all of the evidence presented relating to subjective complaints, including the claimant's prior work record, and observations by third parties and treating and examining physicians relating to such matters as: (1) the claimant's daily activities; (2) the duration, frequency and intensity of the pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness and side effects of medication; (5) functional restrictions.

Id. at 1322.

A claimant's complaints of pain or symptoms "shall not alone be conclusive evidence of disability ... there must be medical signs and findings, established by medically acceptable clinical

or laboratory diagnostic techniques." Travis v. Astrue, 477 F.3d 1037, 1042 (8th Cir. 2007)

(citing 42 U.S.C. § 423(d)(5)(A). An ALJ may not disregard subjective complaints merely

because there is no evidence to support them, but may disbelieve such allegations due to "inherent

inconsistencies or other circumstances." Id. (quoting Eichelberger v. Barnhart, 390 F.3d 584, 589

(8th Cir. 2004)); see also Polaski, 739 F.2d at 1322 (although the ALJ may not accept or reject

the claimant's subjective complaints based solely upon personal observations, he may discount

such complaints if there are inconsistencies in the evidence as a whole). The "crucial question" is

not whether the claimant experiences symptoms, but whether his credible subjective complaints

prevent him from working. Gregg v. Barnhart, 354 F.3d 710, 713-14 (8th Cir. 2003). The

credibility of a claimant's subjective testimony is primarily for the ALJ, not this Court, to decide,

and this Court considers with deference the ALJ's decision on the subject. Tellez, 403 F.3d at

957. When an ALJ considers the Polaski factors and discredits a claimant's subjective complaints

for a good reason, that decision should be upheld. Hogan v. Apfel, 239 F.3d 958, 962 (8th Cir.

2001).

     In evaluating Claimant's credibility, the ALJ determined that she was not fully credible, in

part because her testimony at the hearing was not consistent with what she reported during

treatment, her activities of daily living, and the objective medical evidence.

     The ALJ noted how the medical record is devoid of any evidence showing that Claimant's

condition has deteriorated or required aggressive medical treatment but in fact the objective

findings are minimal and fail to provide strong support for her allegations of disabling symptoms

and limitations. Chamberlain v. Shalala, 47 F.3d 1489, 1495 (8th Cir. 1995) (failure to seek

aggressive medical care is not suggestive of disabling pain); Walker v. Shalala, 993 F.2d 630,

631-32 (8th Cir. 1993)( lack of ongoing treatment is inconsistent with complaints of disabling condition).

The ALJ properly considered the inconsistencies between Claimant's allegations and her extensive activities including social activities and activities of daily living. The ALJ noted that Claimant has no problems caring for herself and her children and cleaning and cooking and doing school work as her daily activities. Further, she testified that she cleans, vacuums, and does the laundry and drives and shops in stores. Claimant also reported reading, watching television, scrapbooking, playing pool twice a week, and using the computer to take online classes and check emails from her stepdaughter's teachers. On a regular basis, she goes to the store, her parents' house, and friends' houses. Claimant indicated that she is able to pay bills and handle a savings account. In addition, the ALJ noted Claimant's self report that she is able to drive, shop, and does not need reminders to take care of her personal needs. See Haley v. Massanari, 258 F.3d 742, 748 (8th Cir. 2001) ("[i]nconsistencies between subjective complaints of pain and daily living patterns diminish credibility"). Further, the ALJ noted how, by her own admission, Claimant is able to engage in a fair range of household chores and activities. Gwathney v. Chater, 104 F.3d 1043, 1045 (8th Cir. 1997) ("The ALJ may discount subjective complaints of physical and mental health problems that are inconsistent with medical reports, daily activities, and other such evidence."); See Riggins v. Apfel, 177 F.3d 689, 693 (8th Cir. 1999) (finding that activities such as driving, shopping, watching television, and playing cards were inconsistent with the claimant's complaints of disabling pain); Nguyen v. Chater, 75 F.3d 429, 430-31 (8th Cir. 1996) (holding that a claimant's daily activities, including visiting neighbors, cooking, doing laundry, and attending church, were incompatible with disabling pain).

Indeed, such activities are inconsistent with his allegations of being disabled. See Medhaug v. Astrue, 578 F.3d 805, 817 (8th Cir. 2009) ("[A]cts such as cooking, vacuuming, washing dishes, doing laundry, shopping, driving, and walking, are inconsistent with subjective complaints of disabling pain); Roberson v. Astrue, 481 F.3d 1020, 1025 (8th Cir. 2007) (some driving, fixing simple meals, and doing housework noted to be inconsistent with allegations of total disability); Pelkey v. Barnhart, 433 F.3d 575, 578 (8th Cir. 2006) (performing household chores and doing yardwork noted to be inconsistent with allegations of total disability); Eichelberger v. Barnhart, 390 F.3d 584, 590 (8th Cir. 2004) (holding that the ALJ properly considered that the plaintiff watched television, read, drove, and attended church upon concluding that subjective complaints of pain were not credible); Dunahoo v. Apfel, 241 F.3d 1033, 1038 (8th Cir. 2001) (concluding "daily activities [such] as getting up, eating, reading, cleaning the house, making the bed, and doing dishes with the help of [a spouse], making meals, visiting with friends, and occasionally shopping and running errands" are inconsistent with a claimant's subjective complaints of disabling pain). "Inconsistencies between [a claimant's] subjective complaints and her activities diminish her credibility." Goff v. Barnhart, 421 F.3d 785, 792 (8th Cir. 2005). See also Nguyen v. Chater, 75 F.3d 429, 439-41 (8th Cir. 1996) (holding that a claimant's daily activities, including visiting neighbors, cooking, doing laundry, and attending church were incompatible with disabling pain and affirming denial of benefits). The Court finds, therefore, that the ALJ properly considered Claimant's daily activities upon choosing to discredit her subjective complaints.

Moreover, the undersigned notes that no treating physician in any treatment notes stated that Claimant was disabled or unable to work or imposed any functional or mental limitations on

Claimant's capacity for work.  See Young v. Apfel, 221 F.3d 1065, 1069 (8th Cir. 2000) (significant that no examining physician submitted medical conclusion that claimant is disabled or unable to work); Edwards v. Secretary of Health & Human Servs., 809 F.2d 506, 508 (8th Cir. 1987) (examining physician's failure to find disability a factor in discrediting subjective complaints).  The absence of objective medical basis to support Claimant's subjective descriptions is an important factor the ALJ should consider when evaluating those complaints.  Renstrom v. Astrue, 680 F.3d 1057, 1065 (8th Cir. 2012); Stephens v. Shalala, 50 F.3d 538, 541 (8th Cir. 1995)(lack of objective findings to support pain is strong evidence of lack of a severe impairment); Barrett v. Shalala, 38 F.3d 1019, 1022 (8th Cir. 1994)(the ALJ was entitled to find that the absence of an objective medical basis to support claimant's subjective complaints was an important factor in evaluating the credibility of her testimony and of her complaints).  Further, as noted by the ALJ, the objective medical record shows Claimant did not have a physical impairment or combination of impairments that significantly limited her ability to perform basic work activities.

Additionally, subjective complaints of pain may be discredited where a claimant ceases to stop smoking  upon a doctor's advice.  See Choate v. Barnhart, 457 F.3d 865, 872 (8th Cir. 2006) ("[A]n ALJ may properly consider the claimant's noncompliance with a treating physician's directions, including failing to take prescription medications, seek treatment, and quit smoking."); Wheeler v. Apfel, 224 F.3d 891, 895 (8th Cir. 1996) (citing Kisling v. Chater, 105 F.3d 1255, 1257 (8th Cir. 1997) (holding impairments which are controllable or amenable to treatment do not support a finding of disability, and failure to follow a prescribed course of remedial treatment, including cessation of smoking, without good reason is grounds for denying an application of

benefits). Therefore, Claimant's failure to cease smoking detracts from her claim that she is unable to engage in substantial gainful employment.

As demonstrated above, a review of the ALJ's decision shows the ALJ not to have denied relief solely on the lack of objective medical evidence to support his finding that Claimant is not disabled. Instead, the ALJ considered all the evidence relating to Claimant's subjective complaints, including the various factors as required by Polaski, and determined Claimant's allegations not to be credible. Although the ALJ did not explicitly discuss each Polaski factor in making his credibility determination, a reading of the decision in its entirety shows the ALJ to have acknowledged and considered the factors before discounting Claimant's subjective complaints. See Brown v. Chater, 87 F.3d 963, 966 (8th Cir. 1996). Inasmuch as the ALJ expressly considered Claimant's credibility and noted numerous inconsistencies in the record as a whole, and the ALJ's determination is supported by substantial evidence, such determination should not be disturbed by this Court. Id.; Reynolds v. Chater, 82 F.3d 254, 258 (8th Cir. 1996). Because the ALJ gave multiple valid reasons for finding Claimant's subjective complaints not entirely credible, the undersigned defers to the ALJ's credibility findings. See Leckenby v. Astrue, 487 F.3d 626, 632 (8th Cir. 2007) (deference given to ALJ's credibility determination when it is supported by good reasons and substantial evidence); Guilliams v. Barnhart, 393 F.3d 798, 801(8th Cir. 2005).

A review of the ALJ's credibility determination shows that, in a manner consistent with and required by Polaski, he considered Claimant's subjective complaints on the basis of the entire record before him, and set forth inconsistencies detracting from Claimant's credibility. An ALJ may disbelieve subjective complaints where there are inconsistencies on the record as a whole.

Battles v. Sullivan, 902 F.2d 657, 660 (8th Cir. 1990). Because the ALJ considered the Polaski factors and discredited Claimant's subjective complaints for good reason, that decision should be upheld.

The undersigned finds that the ALJ considered Claimant's subjective complaints on the basis of the entire record before him and set out the inconsistencies detracting from Claimant's credibility. The ALJ may disbelieve subjective complaints where there are inconsistencies on the record as a whole. Battles v. Sullivan, 902 F.2d 657, 660 (8th Cir. 1990). The ALJ pointed out inconsistencies in the record that tended to militate against the Claimant's credibility. See Guilliams, 393 F.3d at 801 (deference to ALJ's credibility determination is warranted if it is supported by good reasons and substantial evidence). Those included her hearing testimony being inconsistent with what she reported, her activities of daily living, and the objective medical evidence. The ALJ's credibility determination is supported by substantial evidence on the record as a whole, and thus the Court is bound by the ALJ's determination. See Cox v. Barnhart, 471 F.3d 902, 907 (8th Cir. 2006); Robinson v. Sullivan, 956 F.2d 836, 841 (8th Cir. 1992).

While there is evidence to support a contrary result, the ALJ's determination is supported by substantial evidence on the record as a whole. "It is not the role of [the reviewing] court to reweigh the evidence presented to the ALJ or to try the issue in this case de novo." Wiese v. Astrue, 552 F.3d 728, 730 (8th Cir. 2009) (citation omitted). "If after review, [the court] find[s] it possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, [the court] must affirm the denial of benefits." Id. (quoting Mapes v. Chater, 82 F.3d 259, 262 (8th Cir. 1996)). Accordingly, the decision of the ALJ denying Claimant's claims for benefits should be affirmed.

For the foregoing reasons, the ALJ's decision is supported by substantial evidence on the record as a whole. An ALJ's decision is not to be disturbed "'so long as the ... decision falls within the available zone of choice. An ALJ's decision is not outside the zone of choice simply because [the Court] might have reached a different conclusions had [the Court] been the initial finder of fact.'" <u>Buckner v. Astrue</u>, 646 F.3d 549, 556 (8th Cir. 2011) (quoting <u>Bradley v. Astrue</u>, 528 F.3d 1113, 1115 (8th Cir. 2008)). Although Claimant articulates why a different conclusion might have been reached, the ALJ's decision, and, therefore, the Commissioner's, was within the zone of choice and should not be reversed for the reasons set forth above. Accordingly, the decision of the ALJ denying Claimant's claims for benefits should be affirmed.

Therefore, for all the foregoing reasons,

**IT IS HEREBY ORDERED, ADJUDGED and DECREED** that the final decision of the Commissioner denying social security benefits be **AFFIRMED**.

Judgment shall be entered accordingly.

/s/ Terry I. Adelman
UNITED STATES MAGISTRATE JUDGE

Dated this  2nd  day of September, 2014.